## WILSON v. MISSOURI–ILLINOIS R. CO.

Circuit Court of Appeals, Seventh Circuit. December 12, 1928.

No. 4014.

David E. Keefe, of East St. Louis, Ill., for plaintiff in error.

Ralph Lesemann, of East St. Louis, Ill., for defendant in error.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. This appeal is to test the sufficiency of the declaration, as against a general demurrer sustained thereto. Plaintiff's theory is that he cannot mine and

remove his coal, because the additional weight of water, impounded by defendant on the surface above, would cause a subsidence that would let the water down into his mine and injure the property and endanger human life. The averments are:

(a) That B, in 1902, owned the mineral rights, mostly coal, under four quarter sections of land, having a common center, thus:

| SE¼ | SW¼ |
|-----|-----|
| Sec. 2 | Sec. 1 |
| NE¼ | NW¼ |
| Sec. 11 | Sec. 12 |

(b) That in the same year B conveyed to the Illinois Southern Railway four small, widely separated, parcels of land, aggregating about 30 acres, two parcels being in the northeast quarter of section 11, one in the northwest quarter of section 12, and one in the southeast quarter of section 2—"reserving * * * all coal, if any," to grantor.

(c) That in 1910 plaintiff became the owner of the mineral rights of B, above described.

(d) That "after the defendant had so acquired the property described in the deed aforesaid, and without having acquired any other right, the defendant unlawfully and contrary to the intentions of the grantor and grantees, as expressed in the deed hereinbefore referred to," erected a dam in the natural water course flowing across the southerly portion of the land, described as being in sections 11 and 12.

(e) That thereby more than 30 acres of water was impounded on the surface under which plaintiff owns and had owned the coal and mineral products for five years before the dam was built.

(f) That the waters so impounded were 10 feet deep on the surface of such land, "which surface lay immediately above the coal and mineral products of which the plaintiff was the owner."

(g) That by reason of the accumulation of the water and its additional weight plaintiff is deprived of the use and benefit of his coal beneath, beyond, and adjacent to the coal which underlies the surface of the land under the impounded water, for the reasons: (1) That because of the increased additional weight, plaintiff cannot mine the coal under the water; (2) if the coal should be removed, "it would cause a subsidence in the surface which constitutes the roof for the minerals immediately beneath the land" under such water, so that the water would escape into the mine and imperil the lives of men and animals therein; (3) that under the laws of Illinois plaintiff would not be permitted to mine the coal from under the water; (4) that to reach other coal owned by plaintiff it is necessary to drive entries through the coal under the water.

(h) Immediately following the averment of conveyance in (b), it is averred that at the time of conveyance in 1902 there was a shaft for mining coal on said premises from which coal was mined prior thereto and at all times since the date of the conveyance.

The questions here must be determined from what we find upon the face of the declaration. "A demurrer tenders an issue of law upon the facts alleged in the pleading demurred to, which, so far as well pleaded, are admitted to be true." People v. Holten, 259 Ill. 219, 222, 102 N. E. 171, 172. That case, cited by plaintiff, states a narrower rule than claimed by plaintiff. It is only the facts alleged, *so far as well pleaded*, that are admitted. For the purpose of reference, we have placed letters (a, b, etc.) before our abstract of, and quotations from, the declaration.

It is important to note that there is no averment that the Illinois Southern Railway in any way disposed of the four parcels received under (b); (d) is an assumption that defendant under "the deed aforesaid" acquired "property." What the "property" was or what is meant by "the deed aforesaid" is very uncertain. We were given the impression in oral argument that the "property" was the four parcels in (b). Assuming that it was, it does not appear that its ownership or its use had anything to do with the location of the impounded water. The location of the alleged thirty acres of water cannot be ascertained from the declaration. Thirty acres of water, in a body, could not have been on the widely separated four parcels, containing but 30 acres. The Illinois Southern Railway is not a party. We see no reason for the averments relating to the four parcels in (b).

Plaintiff's proposition that, where there is ownership of the land in one and of the minerals under the land in another, there are two estates, may be conceded. Two other propositions are equally well known: (1) If there are no limitations in the deed creating the two estates, certain limitations upon the right to use are presumed as between them; (2) there may be limitations expressed in the deed, and, if so, they exclude the idea of presumptions hostile thereto.

Plaintiff's argument is based wholly upon proposition "1." We are dealing here with the sufficiency of the declaration. Does

it show what, if any, limitations are in the deeds creating the estate in the mineral rights, or in those deeds creating the estate in the land between those mineral rights and the impounded water? If the declaration does not so show, may we presume that there are no limitations in the deeds? Excluding the averments as to the four parcels in (b), for the reasons above stated, the remaining allegations as to the two estates are that plaintiff became the owner of the minerals under the four quarter sections mentioned in (b). As to defendant, it is not averred, but is assumed, that it acquired "property" described in a deed. It is averred that it had no other right, and that the building of the dam and the impounding of the water were "contrary to the intentions * * * expressed in the deed hereinbefore referred to."

How plaintiff acquired the mineral rights is not shown. No instrument of conveyance is set out, nor is any term or condition thereof averred. Whether his title was or was not subject to conditions or limitations is not shown. No right to mine coal is averred. If the words "the deed hereinbefore referred to" mean the deed to the four parcels in (b), then, for the reasons above shown, the averment, as to the defendant, amounts to nothing more than to say that defendant was a trespasser so far as the land under the water is involved. In that event, the declaration does not deal with the relation of one estate to another, but does deal with the acts of a trespasser, not upon plaintiff's estate, but upon another estate, as to the relations between which and plaintiff's estate there are no averments. If by "the deed hereinbefore referred to" some other deed is meant than that in (b), then it does appear from the declaration that there is a title deed having limitations in it affecting the rights as between the two estates. What those limitations are is not averred. Nothing further is shown with reference to the deed.

In the absence of showing what those limitations are, it cannot be known whether defendant's acts, alleged to be contrary thereto, were unlawful or not. Failure to make such averment is failure to aver a material fact, in the absence of which the conclusion that defendant acted unlawfully is a mere assumption.

▮▮ It appears that for nearly a quarter of a century before the commencement of this suit coal had been continuously mined from under the four quarter sections in (a), the mineral rights in which plaintiff acquired (c). Plaintiff therefore had before him uncontrovertible evidence of facts that should have taken the place, to make a good declaration, of the many conclusions therein stated. Those facts must have shown: (1) The extent to which the coal had then been mined; (2) the thickness of the vein mined; (3) the depth of the vein mined below the surface; (4) whether and what surface subsidence there had been, either with or without additional weight upon the land; (5) the character of the roof over the entries and the rooms. Possibly it also showed that the impounded water would not cause any surface subsidence, because those conditions may have shown that the coal under a portion or all of the impounded water had been mined. None of these facts is averred.

Nor do we find in (g)—the paragraph that deals with the consequences of impounding water—the averment of any fact, save one, and, properly construed, that fact is an immaterial one, except to show that the water was somewhere over the mineral rights. The first averment, referring to the surface on which the water was, is, "which surface lay immediately above the coal and mineral products," and the second, speaking of the weight of the water, is, "it would cause a subsidence in the surface which constitutes the roof for the minerals immediately beneath the land where such water has been collected." If "immediately," as used, indicates direction, the fact is immaterial, except as showing that the water was somewhere over the coal. If used to indicate that there was nothing between the coal and the surface upon which the water rested, then the mining of the coal would take away the surface, and the water from the creek, whether impounded or not, would probably go down into the mine.

There is an assumption, but no averment, as to what, if any, coal is below the impounded water. There is no averment that it can be profitably mined, if there is any there. Averment of the foregoing facts would have shown the probability or improbability of the injurious consequences from defendant's act in impounding the water. It does not necessarily follow that the weight of water, 10 feet deep, would prevent the mining of coal at some unknown depth below the surface. There is no legitimate connection between the two things, nor is it a legitimate conclusion to say that that depth of water would cause surface subsidence of such a character that the water would go down into a mine entry or room some undisclosed depth below the surface. There is no attempt to aver facts to show the assumed right in plaintiff to drive entries for the purpose of min-

ing other coal. The declaration states the same conclusions as to the driving of entries for that purpose as are stated in (g) with reference to the mining of the coal underneath the water.

That plaintiff's statement that he will not be permitted, under the Illinois law, to mine the coal is a mere conclusion, is clear from a reading of the Illinois statute cited in his brief. 5 Callaghan's Ill. Stat. Ann. p. 5105, § 98. The substance of that act is that, if a mine is found unsafe because of violations of the Mining Act, or is in a dangerous condition, the proprietor shall be notified, and if the defect has not been remedied within the time specified in the notice, then a suit must be instituted in equity for an injunction. Comment on this contention seems unnecessary.

If we were to attempt to decide the rights as between the plaintiff and defendant here, we would have to do it in the face of the fact that there is a fair inference as against the plaintiff that there is some sort of limitation in one deed upon the rights of one of the parties, the character of which is not disclosed by the declaration, and assume that there are no limitations in any instrument creating the separate estates that operate as a limitation upon the right of use as between the two estates. This we cannot do.

The declaration is so lacking in material averments and is in many respects so indefinite and uncertain that the decree sustaining the demurrer must be and it is affirmed.